IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

**FILED**
**U.S. District Court**
**District of Kansas**
11/12/2026
**Clerk, U.S. District Court**
**By:** SND **Deputy Clerk**

ANTHONY JAFETH LANDAVERDE-ROMAN,

Petitioner,

v.

MARKWAYNE MULLIN, DHS Secretary;
CHRISTOPHER CHAMBERLAIN,
Acting Assistant Field Officer Director;
Department of Homeland Security;
TODD BLANCHE, Attorney General;
Executive Office for Immigration Review; and
JACOB WELSH, Warden,
Chase County Detention Center,

Respondents.

Case No. 26-3397-JWL

## MEMORANDUM AND ORDER

Petitioner, through counsel, has filed a petition for habeas corpus under 28 U.S.C. § 2241, in which he challenges his detention by immigration officials. The petition is hereby **granted**. Respondents are ordered to effect the release of petitioner on or before **November 20, 2026**, and they are further ordered to provide notice to this Court when such relief has been given.

Petitioner, a native of Honduras, entered the United States without authorization in 2022; removal proceedings were initiated, and he was released. In 2024, United States Citizenship and Immigration Services (USCIS) granted petitioner deferred action status after approving his petition for a special immigration juvenile classification, and

subsequently his removal proceedings were administratively closed. On July 2, 2026, petitioner was arrested for possession of marijuana, but the prosecutor ultimately declined to prosecute him; nevertheless, immigration officials lodged a detainer, and they took custody of petitioner on July 3, 2026. On July 6, 2026, USCIS terminated petitioner's deferred action status. On October 16, 2026, petitioner submitted an application to USCIS for a U Visa; on October 19, 2026, USCIS confirmed receipt of that application, and immigration officials were informed of the application at an immigration court hearing. Petitioner remains confined in this judicial district. Petitioner filed the present action on October 20, 2026; respondents have filed an answer, and petitioner has filed a reply brief, and the matter is therefore ripe for ruling.

In his first claim, petitioner argues that the Government has not complied with an applicable 2021 policy in continuing to detain him.[1] On May 20, 2026, a federal district court stayed a 2025 Government directive – including its rescission of prior policies – as applied to a class that includes any individual with a pending U Visa application. *See Immigration Center for Women and Children (ICWC) v. Noem*, 351 F.R.D. 324, 396-97 (C.D. Cal. 2026). The result is that the Government's immigration enforcement activities against such individuals are presently governed by a 2021 Directive (ICE Directive 11005.3) entitled "Using a Victim-Centered Approach with Noncitizen Crime Victims." The 2021 Directive states in relevant part as follows:

> [A]bsent exceptional circumstances, ICE will refrain from taking civil immigration enforcement action against known beneficiaries of victim-based

[1] Although the same policy would prohibit petitioner's removal, this Court is authorized to review only petitioner's detention pending his removal proceedings.

> immigration benefits and those known to have a pending application for such benefits [such as a U Visa].
>
> . . .
>
> When a noncitizen has a pending or approved application or petition for a victim-based immigration benefit, absent exceptional circumstances, ICE will exercise discretion to defer decisions on civil immigration enforcement action against the applicant or petitioner (primary and derivative) until USCIS makes a final determination on the pending victim-based immigration benefit application(s) or petition(s) . . . .
>
> . . .
>
> ICE should pursue civil immigration enforcement action against beneficiaries of victim-based immigration benefits only in exceptional circumstances . . . .

An enforcement action for purposes of the Directive is defined to include a decision "whether or not to . . . [d]etain or release from custody subject to conditions;" and exceptional circumstances generally exist only if the noncitizen "poses national security concerns" or "poses an articulable risk of death, violence, or physical harm to any person." Petitioner argues that her detention violates the governing directive because there are no exceptional circumstances here as required.

Respondents first argue that the *ICWC* court's orders should not be considered binding on this Court. As the Court has previously explained in rejecting this argument, it does not decide in this case whether the Government violated the *ICWC* court's injunctions; rather, the Court considers only whether the Government violated the 2021 Directive, which now governs enforcement activities with respect to certain noncitizens. *See Mondragon Gordillo v. Mackey*, 2026 WL 3132071, at *2 (D. Kan. Oct. 20, 2026) (Lungstrum, J.); *Escobar Ramirez v. Mullin*, 2026 WL 2619875, at *2 (D. Kan. Sept. 4,

2026) (Lungstrum, J.). The Government does not dispute that petitioner is a member of the *ICWC* class or that it must abide by the 2021 Directive with respect to its enforcement activities involving petitioner. In addition, this Court has previously rejected the Government's interpretation of the 2021 Directive that would not require exceptional circumstances for continued detention if the petitioner did not become an applicant for victim-based benefits until after detention. *See Mondragon Gordillo*, 2026 WL 3132071, at *2.[2] Thus, the Court concludes, as it has in its previous cases involving application of the 2021 Directive, that the Government was permitted to continue petitioner's detention pending his removal proceedings only if detention was justified by exceptional circumstances, meaning petitioner posed either national security concerns or "an articulable risk of death, violence, or physical harm to any person."

Respondents concede that no such determination has been made with respect to petitioner, even though the Government received notice of petitioner's application on

---

[2] In *Mondragon Gordillo*, in distinguishing another case, the Court noted that the Government had made new enforcement decisions after learning of the petitioner's application, including making a custody determination and then (after the petitioner filed the habeas action) making a determination specifically under the Directive. Similarly here, local officials reviewed petitioner's custody status after this action was filed, made a recommendation, and are awaiting concurrence from superior officials (seemingly pursuant to the Directive). In a footnote in their brief, respondents argue that the Court has created a "perverse incentive" not to conduct a review under the Directive if that review itself is what makes the Directive applicable to a new applicant-detainee. The Court did not condition such application, however, on a new custody determination under the Directive. In the present case, petitioner's counsel made the Government aware of the application at the immigration court hearing on October 19, 2026, and the Government nevertheless refused to release petitioner; and that refusal would constitute an enforcement decision that is prohibited by the Directive in the absence of exceptional circumstances, even if the Government had not initiated a review under the Directive.

October 19, 2026, over three weeks ago. They have submitted evidence that local officials made a recommendation concerning petitioner's detention, but that superior officials have not yet made a decision on that recommendation. Respondents note petitioner's arrest (without prosecution) for possession of marijuana, but they do not argue that that conduct creates or evidences a risk of harm to the public. Respondents have not identified any such conduct or exceptional circumstances that would permit detention of petitioner under the Directive, nor do they argue that the Court should find compliance with the Directive in this case; rather, they merely state that the Court "should analyze Petitioner's claim and determine under these facts whether exceptional circumstances exist." Moreover, as petitioner notes, at his two bond hearings, the Government did not oppose bond based on danger to the community, and the immigration court did not find such a danger in denying release on bond.

In *Mondragon Gordillo*, the Court found that the Government's evidence was not sufficient to show that it had made the required determination under the Directive, as follows:

> The Government's declaration does not state, however, that any Government official made a specific determination that petitioner posed a risk of violence or harm; rather, it merely states that the Government adhered to the 2021 Directive; that an official reviewed petitioner's criminal history (including the arrest) and "considered" whether petitioner posed such a risk; and that the superior official then concurred with the decision to continue the detention of petitioner. The declaration did not include documentation of any determination made under the Directive; nor did the declaration identify the purportedly "articulable" risk that petitioner posed. Indeed, given respondents' position in this case that exceptional circumstances were not required for petitioner's continued detention, the official may have merely determined that petitioner should remain detained because she was originally detained prior to the filing of her VAWA self-petition. Thus, because the

> basis for the Government's recent detention determination remains unclear, the Court cannot yet determine whether the Government did rely on an articulable risk of harm or violence as required by the 2021 Directive.

*See id.* at *3. In their brief, respondents acknowledge this finding in the prior case, and they state that "DHS was aware of this Court's expectations" regarding the required evidence, but they state that they have no further facts to present nonetheless.

Respondents concede that the Government has not made the determination required to detain petitioner under the Directive. Nor have respondents identified exceptional circumstances that would allow detention under the Directive. Accordingly, the Court finds that the Government has violated the Directive by continuing to detain petitioner, who is therefore entitled to his release.[3] [4]

IT IS THEREFORE ORDERED BY THE COURT THAT THAT the petition for habeas corpus under 28 U.S.C. § 2241 is hereby **granted**. Respondents are ordered to

---

[3] Respondents have not argued that any particular terms of supervision should be imposed if petitioner is released. Accordingly, as it did in *Mondragon Gordillo*, the Court orders that petitioner be released subject to no additional terms of supervision beyond those that were already in place in his removal proceedings prior to his detention, so that the *status quo ante* is achieved here. Moreover, respondents must ensure that officials are aware of this order, so that petitioner does not suffer the type of "oversight" that occurred in *Mondragon Gordillo*, in which an official imposed a new ankle monitoring condition despite the Court's prohibition.

[4] Petitioner also claims that his detention was unlawful because of his deferred action status, which had not yet been terminated, and respondents do not appear to dispute that detention was not permitted on that date. Nevertheless, as petitioner has stated, because the Court grants relief on the first claim, it need not address petitioner's other claims.

effect the release of petitioner on or before **November 20, 2026**, and they are further ordered to provide notice to this Court when such relief has been given.

IT IS SO ORDERED.

Dated this 13th day of November, 2026, in Kansas City, Kansas.

/s/ John W. Lungstrum
Hon. John W. Lungstrum
United States District Judge